IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:21-CT-3311-M

SIDDHANTH SHARMA, )
)
      Plaintiff, )
)
v. ) ORDER
)
DEMETRIUS CLARK, et al., )
)
      Defendants. )

This matter is before the court on the defendants' motion for summary judgment [D.E. 82]. Plaintiff responded in opposition. For the reasons stated below, defendants' motion is granted.

PROCEDURAL HISTORY

On October 13, 2021, plaintiff, a state inmate proceeding pro se, filed the instant action pursuant to 42 U.S.C. § 1983 alleging defendants violated his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution by holding improper disciplinary proceedings, sexually assaulting him, placing him in isolation for refusing to be vaccinated for COVID-19, and confiscating his legal mail. (Compl. [D.E. 1] at 6; Second Mot. Am. [D.E. 6] at 2; Second Mot. Am., Aff. Part 1 [D.E. 6-1] at 1; Pl. Second Aff. [D.E. 6-2] at 3). On February 11, 2022, the court conducted a frivolity review of the complaint and allowed the action to proceed as to defendants Demetrius Clark ("Clark"), Felix Taylor ("Taylor"), Dean Heffernan ("Heffernan"), Christopher Adams ("Adams"), Tony Bethea ("Bethea"), Christopher Quick ("Quick"), Brian Kerstetter ("Kerstetter"), and Stephen Jacobs ("Jacobs"). On December

7, 2022, the court granted plaintiff's motion for supplemental briefing regarding additional retaliatory actions defendants Jacobs, Bethea, Quick, and Kerstetter took against plaintiff.

After an extended period of discovery and extensions of dispositive motions deadline, defendants timely filed the instant motion for summary judgment on June 20, 2023, relying on a memorandum in support, statement of material facts, and appendix of exhibits thereto, which includes: (1) North Carolina Department of Public Safety ("NCDPS") offender public information regarding plaintiff; (2) publicly available list of plaintiff's prison infractions; (3) defendants Heffernan, Taylor, Clark, Kerstetter, Quick, Bethea, Jacobs, and Adams' declarations; (4) NCDPS standard operating procedures for conducting searches, contraband control, offender sexual assault, and disciplinary procedures at Bertie Correctional Institute ("CI"); (5) incident report dated July 15, 2021, and related documents; (6) disciplinary reports related to the July 15 and September 10, 2021, incidents; (7) Prison Rape Elimination Act ("PREA") investigation report; (8) NCDPS standard operating procedures regarding offender property and mail at Scotland CI; and (9) plaintiff's personal property inventory dated October 13, 2021. (Mot. Summ. J. [D.E. 82]; Def. Mem. [D.E. 83]; Def. Statement of Material Facts [D.E. 84]; Def. App. [D.E. 85]).

On July 7, 2023, plaintiff filed a verified response in opposition relying on a verified statement of material facts. (Pl. Resp. [D.E. 89]; Pl. Stmt. [D.E. 90]).

## STATEMENT OF FACTS

The facts of this case, viewed in the light most favorable to plaintiff, are summarized as follows. At all times relevant to this action, plaintiff was an inmate housed in either Bertie CI or Scotland CI. (Pl. Stmt. [D.E. 90] at 2). Plaintiff was serving a sentence of seven years, two months, and 20 days for larceny of firearms and possession of a firearm by a felon. (Pl. Stmt. [D.E. 90] at

2

2; Def. Ex. A [D.E. 85-1] at 1–3). Plaintiff was released from custody on December 7, 2022. (Pl. Stmt. [D.E. 90] at 2; Def. Ex. A [D.E. 85-1] at 1).

At Bertie CI, on July 15, 2021, at approximately 7:46 a.m., plaintiff was observed fighting with another inmate. (Heffernan Decl. [D.E. 85-3] ¶ 9). Defendant Heffernan escorted plaintiff to the shower pod B area in the Lower Red Unit in restrictive housing. (Pl. First Aff. [D.E. 6-2] at 1; Heffernan Decl. [D.E. 85-3] ¶¶ 9–10; Taylor Decl. [D.E. 85-4] ¶ 8). Heffernan gave plaintiff verbal directives to conduct a complete search pursuant to established procedures. (Heffernan Decl. [D.E. 85-3] ¶ 10). Pursuant to prison procedure, a complete search is "comprised of a strip search of the offender, a search of the offender's effects, outside visual examination of body cavities and hair, in which contraband might be concealed." (Heffernan Decl. [D.E. 85-3] ¶ 11; Def. Ex. 3 [D.E. 85-4] at 11). Further, "[a]ll offenders being placed on restrictive housing upon entering/exiting the restrictive housing unit will receive a complete search." (Def. Ex. 3 [D.E. 85-4] at 11).

> During Heffernan's complete search of plaintiff, Heffernan
>
> visually examined [p]laintiff's groin area and directed him to spread his feet to shoulder width then lift his scrotum and penis. [He] then gave [p]laintiff a directive to drop his scrotum while holding his penis so [he] could inspect the area for any contraband that may be taped to the penis. [He] then issued a directive for [plaintiff] to turn around and spread his feet to shoulder width, bend over at the waist, and spread the buttocks.

(Heffernan Decl. [D.E. 85-3] ¶ 13; Pl. First Aff. [D.E. 6-2] at 1; Pl. Stmt. [D.E. 90] at 3–4). Plaintiff complied with all directives. (Heffernan Decl. [D.E. 85-3] ¶ 14; Pl. Stmt. [D.E. 90] at 3-4). During the search plaintiff was found to be in possession of two homemade weapons, approximately six and eight inches long. (Heffernan Decl. [D.E. 85-3] ¶ 15; Pl. Stmt. [D.E. 90] at

3

4; Def. Ex. 6 [D.E. 85-3] at 49, 60–61). Heffernan also found an LG cell phone in a pouch sewn into plaintiff's boxers. (Heffernan Decl. [D.E. 85-3] ¶ 15; Def. Ex. 6 [D.E. 85-3] at 49–50, 58–59).[1]

Plaintiff was charged with possession of an audio/video/image device and weapon possession. (Pl. First Aff. [D.E. 6-2] at 1; Pl. Stmt. [D.E. 90] at 4; Heffernan Decl. [D.E. 85-3] ¶ 16; Def. Ex. 7 [D.E. 85-3] at 62; Felix Decl. [D.E. 85-4] ¶ 11). Plaintiff then wrote a statement denying all allegations and explained defendant Heffernan was lying. (Pl. First Aff. [D.E. 6-2] at 1). Plaintiff requested to see the disciplinary hearing Officer ("DHO"), that defendant Heffernan be present at the hearing, video footage to be reviewed, and physical evidence to be brought to the hearing. (Pl. First Aff. [D.E. 6-2] at 1).

On July 28, 2021, defendant Taylor, the DHO, conducted a disciplinary hearing related to the possession of weapons and cell phone. (Pl. First Aff. [D.E. 6-2] at 1; Pl. Stmt. [D.E. 90] at 4; Taylor Decl. [D.E. 85-4] ¶ 12). Plaintiff participated in the hearing. (Pl. Stmt. [D.E. 90] at 4; Taylor Decl. [D.E. 85-4] ¶ 12). After a reading of the summary evidence, the disciplinary process and appeal rights were explained to plaintiff. (Pl. Stmt. [D.E. 90] at 5; Taylor Decl. [D.E. 85-4] ¶ 13; Def. Ex. 5 [D.E. 85-4] at 40). Plaintiff pled guilty to weapons possession and not guilty to possession of the cell phone. (Pl. Stmt. [D.E. 90] at 5; Taylor Decl. [D.E. 85-4] ¶ 13; Def. Ex. 5 [D.E. 85-4] at 40). Plaintiff submitted a written statement on which he wrote "NO STATEMENT." (Pl. Stmt. [D.E. 90] at 5; Taylor Decl. [D.E. 85-4] ¶ 13; Def. Ex. 5 [D.E. 85-4] at 47). During the hearing, plaintiff verbally stated he was not in possession of a cell phone. (Pl. Stmt. [D.E. 90] at 5; Taylor Decl. [D.E. 85-4] ¶ 13). No physical evidence was presented, and plaintiff was kicked out of the hearing room. (Pl. First Aff. [D.E. 6-2] at 1).

---

[1] Plaintiff disputes that he was in possession of a cell phone. (Pl. Stmt. [D.E. 90] at 4).

4

Based on the evidence before him, Taylor found plaintiff guilty of possession of a cell phone and imposed sanctions, including being placed in restrictive housing. (Pl. Stmt. [D.E. 90] at 5; Taylor Decl. [D.E. 85-4] ¶ 15). Plaintiff was given a copy of the report, the sanctions imposed, and an appeal form.[2] (Taylor Decl. [D.E. 85-4] ¶ 16). Plaintiff was given two appeal forms, one for each charge, and he did in fact appeal. (Pl. Stmt. [D.E. 90] at 5). Plaintiff immediately appealed to the Director of Prisons but never received a response. (Pl. First Aff. [D.E. 6-2] at 1). At no time was plaintiff in restrictive housing because he refused a COVID-19 vaccine. (Clark Decl. [D.E. 85-5] ¶ 9).

Thereafter, plaintiff initiated a PREA complaint against defendant Heffernan. (Pl. First Aff. [D.E. 6-2] at 1; Pl. Stmt. [D.E. 90] at 5; Heffernan Decl. [D.E. 85-3] ¶ 17). Although plaintiff was not interviewed, the investigation determined there was no evidence to support plaintiff's PREA allegations. (Pl. Stmt. [D.E. 90] at 5; Heffernan Decl. [D.E. 85-3] ¶ 17; Def. Ex. 8 [D.E. 85-3] at 74). The investigatory records report plaintiff refused to exit his cell for an interview. (Def. Ex. 8 [D.E. 85-3] at 73).

On September 10, 2021, at approximately 11:45 a.m., plaintiff was given a direct order to return to regular population from restrictive housing. (Pl. First Aff. [D.E. 6-2] at 2; Taylor Decl. [D.E. 85-4] ¶ 17; Def. Ex. 6 [D.E. 85-4] at 48). Petitioner refused COVID-19 vaccination and testing, and refused to wear a mask in order to return to general population. (Pl. Stmt. [D.E. 90] at 5). Plaintiff was charged with refusal to comply with direct order. (Pl. Stmt. [D.E. 90] at 5; Taylor Decl. [D.E. 85-4] ¶ 17; Def. Ex. 6 [D.E. 85-4] at 48). The investigating sergeant read

---

[2] Plaintiff disputes that he was permitted to present evidence at the DHO hearing. (Pl. Stmt. [D.E. 90] at 5). Plaintiff states he was instructed to return to his cell and was found guilty. (Id.).

5

plaintiff the reporting officer's statement. (Pl. Stmt. [D.E. 90] at 6; Taylor Decl. [D.E. 85-4] ¶ 18). Plaintiff acknowledged, signed, and received a copy of form DC-138A. (Pl. Stmt. [D.E. 90] at 6; Taylor Decl. [D.E. 85-4] ¶ 18). Plaintiff was then afforded the opportunity to write a statement, but plaintiff refused. (Pl. Stmt. [D.E. 90] at 6; Taylor Decl. [D.E. 85-4] ¶ 19).

On September 22, 2021, defendant Taylor conducted a disciplinary hearing related to the charge of refusal to comply with direct order. (Pl. First Aff. [D.E. 6-2] at 2; Pl. Stmt. [D.E. 90] at 6; Taylor Decl. [D.E. 85-4] ¶ 20). No one notified plaintiff of the hearing. (Pl. First Aff. [D.E. 6-2] at 2; Pl. Stmt. [D.E. 90] at 6). Hearing records, while not signed by plaintiff, note that plaintiff refused to attend the hearing and are signed by witnessing officers. (Def. Ex. 6 [D.E. 85-4] at 50-51; Taylor Decl. [D.E. 85-4] ¶ 20; Pl. Stmt. [D.E. 90] at 6). Petitioner was given the opportunity to submit a written statement to be considered, but he refused. (Def. Ex. 6 [D.E. 85-4] at 50–51; Taylor Decl. [D.E. 85-4] ¶ 20). Plaintiff was found guilty, and sanctions were imposed. (Pl. Stmt. [D.E. 90] at 6; Taylor Decl. [D.E. 85-4] ¶ 21). Plaintiff never received a copy of the disciplinary report, sanctions imposed, or appeal form. (Pl. Stmt. [D.E. 90] at 6).

On October 13, 2021, plaintiff was transferred to Scotland CI and placed on restrictive housing on control status. (Pl. First Aff. [D.E. 6-2] at 2; Kerstetter Decl. [D.E. 85-6] ¶ 8; Quick Decl. [D.E. 85-7] ¶ 8; Bethea Decl. [D.E. 85-8] ¶ 8; Jacobs Decl. [D.E. 85-9] ¶ 13). Such housing assignment was made while plaintiff was at Bertie CI. (Jacobs Decl. [D.E. 85-9] ¶ 13). Defendant Jacobs placed plaintiff in Closed Custody when he should have been placed in Medium Custody. (Pl. Stmt. [D.E. 90] at 6). Defendants Kerstetter, Quick and Bethea processed plaintiff's arrival. (Pl. Stmt. [D.E. 90] at 7; Kerstetter Decl. [D.E. 85-6] ¶¶ 8–10; Quick Decl. [D.E. 85-7] ¶ 8; Bethea Decl. [D.E. 85-8] ¶¶ 8–10).

6

Upon arrival, plaintiff was informed he had too much property, such as books, which plaintiff elected to send home. (Pl. Stmt. [D.E. 90] at 6; Kerstetter Decl. [D.E. 85-6] ¶ 8; Quick Decl. [D.E. 85-7] ¶ 8; Bethea Decl. [D.E. 85-8] ¶ 8). Plaintiff was also in possession of large amounts of legal mail. (Pl. Stmt. [D.E. 90] at 6; Kerstetter Decl. [D.E. 85-6] ¶ 8). Upon confiscation of portions of plaintiff's legal mail, plaintiff was never shown a form that listed the legal mail that was to be stored on plaintiff's behalf. (Pl. Stmt. [D.E. 90] at 6; see also Kerstetter Decl. [D.E. 85-6] ¶ 9; Quick Decl. [D.E. 85-7] ¶ 8; Bethea Decl. [D.E. 85-8] ¶ 8). However, he was informed that he possessed too much property, and some of his property would be placed in storage. (Pl. First Aff. [D.E. 6-2] at 2; Pl. Stmt. [D.E. 90] at 6; Kerstetter Decl. [D.E. 85-6] ¶ 9; Quick Decl. [D.E. 85-7] ¶ 8; Bethea Decl. [D.E. 85-8] ¶ 8).

Plaintiff was informed that only legal mail pertaining to ongoing cases could be kept, but all of plaintiff's legal mail pertained to ongoing cases at the time. (Pl. Stmt. [D.E. 90] at 6; Kerstetter Decl. [D.E. 85-6] ¶ 9; Quick Decl. [D.E. 85-7] ¶ 8; Bethea Decl. [D.E. 85-8] ¶ 9). Further, plaintiff was not given the opportunity to select legal materials to keep because he was handcuffed behind his back at the time and could not reach into the receptacle in which his legal mail had been placed. (Pl. Stmt. [D.E. 90] at 7). Plaintiff also witnessed defendants Bethea and Quick throwing some of plaintiff's legal mail in the trash because it had an "incision on/in it." (Pl. Stmt. [D.E. 90] at 7). During the encounter, plaintiff was irate and used profane language against defendants Kerstetter, Quick, and Bethea. (Pl. Stmt. [D.E. 90] at 7; Kerstetter Decl. [D.E. 85-6] ¶ 10; Bethea Decl. [D.E. 85-8] ¶ 9). Plaintiff's property, including legal mail, was inventoried and stored. (Kerstetter Decl. [D.E. 85-6] ¶ 11; Def. Ex. 5 [D.E. 85-6] at 30–34 (documenting five bags of legal mail); Quick Decl. [D.E. 85-7] ¶ 9; Bethea Decl. [D.E. 85-8] ¶ 11). Defendant Bethea

7

informed plaintiff his property was confiscated because defendant Jacobs ordered that it be taken away. (Pl. Second Aff. [D.E. 23] at 11). When plaintiff was eventually removed from Closed Custody and received his legal mail and materials, documents were missing from one of plaintiff's ongoing separate ongoing federal cases. (Pl. Stmt. [D.E. 90] at 7). Defendant Adams has never personally taken or withheld anything from plaintiff. (Adams Decl. [D.E. 85-10] at ¶ 5–7; see also Pl. Stmt. [D.E. 90] at 8).

Defendant Jacobs was responsible for directing and implementing the response to COVID-19 at Scotland CI. (Pl. Stmt. [D.E. 90] at 8; Jacobs Decl. [D.E. 85-9] ¶ 6). Closed Custody inmates were not allowed out of their cells for recreation without a face mask, which happened to petitioner numerous times. (Pl. Stmt. [D.E. 90] at 8). At visitation, inmates were not allowed to hug family members and had to speak through a plastic shield while standing six feet apart at all times. (Id.). Plaintiff was never allowed outside for recreation during his time in Closed Custody. (Id.).

Defendant Jacobs implemented COVID-19 policies as directed by NCDPS. (Jacobs Decl. [D.E. 85-9] ¶ 7). Jacobs oversaw the implementation of the following measures: (1) "an aggressive and thorough cleaning regiment [sic] that has focused on the cleanliness of the facility itself as well as the vehicles used to transport offenders"; (2) "disinfectant soap for distribution among the offender population"; (3) "protective masks for distribution to staff and offenders;" (4) "staff members routinely briefed on the facility's ongoing response efforts and the work needed to implement these efforts accordingly"; (5) "ample supplies of soap, hand cleansers, masks and disinfectant, with a

process in place to replenish supplies on a regular basis." (Jacobs Decl. [D.E. 85-9] ¶ 8; Pl. Stmt.

8

[D.E. 90] at 8). Custodial staff were required to wear personal protective equipment when around quarantined offenders, and staff had consistent duty assignments as much as possible to limit transmission of COVID-19. (Jacobs Decl. [D.E. 85-9] ¶ 9; Pl. Stmt. [D.E. 90] at 9).

After the commencement of this action, defendants Jacobs, Bethea, Quick, and Kerstetter placed plaintiff in the highest category of custody. (Pl. Mot. Suppl. [D.E. 53] at 1–5).

## COURT'S DISCUSSION

A.  Legal Standard

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). For cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392 (4th Cir. 2014). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 247–48, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). To determine whether a genuine issue of material fact exists for trial, the court views the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

9

B.  Analysis

   1. Plaintiff's Response in Opposition to Summary Judgment Motion

Plaintiff's response in opposition does not directly address defendants' arguments in their motion for summary judgment. Instead, plaintiff argues the motion for summary judgment is untimely, he was not given the opportunity to engage in discovery, and he was not given the opportunity to properly respond to the motion for summary judgment. (Pl. Resp. [D.E. 89] at 4-17). First, defendants' motion for summary judgment was timely where it was submitted in accordance with the court's scheduling order and subsequent extensions. [D.E. 42, 64, 74, 76, 79, 81].

Secondly, the discovery period lasted for approximately six months. [D.E. 42, 64]. Plaintiff never filed a motion for extension of time or to compel. Plaintiff argues he could not participate in discovery because he was incarcerated, but he provides no explanation as to how his incarceration prevented him from participating. (See Pl. Resp. [D.E. 89] at 12). Lastly, plaintiff was given the opportunity to properly respond to the motion for summary judgment where he was issued a notice pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), and he, in fact, responded.

   2. Defendant Jacobs – Deliberate Indifference

Plaintiff alleges defendant did not follow proper COVID-19 protocols and that the measures instituted were excessive and exaggerated. (Pl. Stmt. [D.E. at 8). For example, inmates were not

10

allowed to hug family during visitation or use of the weight room was allowed, and inmates were mandated to wear facemasks outside of their cells. (Id.). Respondents argue defendant took reasonable measures during the COVID-19 pandemic. (Def. Mem. [D.E. 83] at 13).

The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994); see Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Under the first prong, "a prisoner must establish . . . a serious or significant physical or emotional injury" or that "he was incarcerated under conditions posing a substantial risk of serious harm." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014).

The deliberate indifference prong requires a showing that defendant knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837–38; Danser, 772 F.3d at 347. A plaintiff may establish deliberate indifference by producing direct evidence showing the prison official had actual knowledge of the risk and failed to protect him. Farmer, 511 U.S. at 842–43. As an alternative, "a prison official's subjective actual knowledge can be proved through circumstantial evidence" by showing that the risk was "obvious" and that the circumstances suggest the defendant must have known about it. Makdessi, 789 F.3d at 133; see also Farmer, 511 U.S. at 842. The official "must also have recognized that his actions were

11

insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844; Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

Defendants do not dispute that the COVID-19 pandemic posed a substantial risk of serious harm.[3] (See Def. Mem. [D.E. 83] at 13–15). Thus, the court turns to the deliberate indifference prong.

The record evidence demonstrates that defendant had direct knowledge of the risk COVID-19 presented to inmates, including plaintiff. (See Taylor Decl. (DE 85-9) ¶¶ 5–7). However, the undisputed evidence shows defendant took reasonable measures to address the risk of COVID-19 by implementing policies and procedures to protect against the spread of the virus. See Koon v. North Carolina, 50 F.4th 398, 407 (4th Cir. 2022) ("In general, good-faith efforts to remedy the plaintiff's problems will prevent finding deliberate indifference, absent extraordinary circumstances."). As noted above, defendant ordered a number of new policies and procedures to protect inmates from the spread of COVID-19. Defendant implemented an aggressive and thorough cleaning regimen; disinfectant soap and protective masks were distributed; and staff was briefed on the facility's ongoing response; and contact between inmates was limited. (Jacobs Decl. [D.E. 85-9] ¶¶ 8–10). Courts have found that such measures are a reasonable response to a rapidly evolving, emergent global pandemic, thereby precluding Eighth Amendment liability. See Wilson

---

[3] To the extent plaintiff argues policies were too restrictive, he fails to demonstrate through record evidence that the policies created a serious deprivation of a basic human need.

12

v. Williams, 961 F.3d 829, 841–44 (6th Cir. 2020); Swain v. Junior, 958 F.3d 1081, 1088–90 (11th Cir. 2020); Hallinan v. Scarantino, 466 F. Supp. 3d 587, 605–08 (E.D.N.C. 2020). Therefore, plaintiff has not demonstrated defendant Jacobs was deliberately indifferent to his conditions of confinement.

3. Defendant Heffernan – Sexual Assault Claim

As noted, plaintiff alleges defendant Heffernan sexually assaulted him during a complete search following a physical altercation with another inmate on July 15, 2021. (Pl. First Aff. [D.E. 6-2] at 1; Pl. Stmt. [D.E. 90] at 3–4); Heffernan Decl. [D.E. 85-3] ¶¶ 9–11, 13–14). The Eighth Amendment protects against the sexual abuse of prisoners. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (holding Eighth Amendment protects inmates from violent assaults); Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016). Thus, the same two-prong standard stated above for claims of Eighth Amendment violations applies to sexual assault of prisoners by prison staff.

Plaintiff's own verified statements established that defendant Heffernan directed him to strip in order to perform a complete search. (Pl. Stmt. [D.E. 90] at 3–4). Heffernan did not touch plaintiff. (Id.; Heffernan Decl. [D.E. 85-3] ¶ 13). Plaintiff argues the search "exceeded the scope and authority given . . . where it rendered into sexual humiliation/violation/harassment, ect." (Pl. Stmt. [D.E. 90] at 4). However, there is no evidence in the record that indicates the search was performed in order to harass or humiliate plaintiff. In fact, the evidence shows the search was conducted due to a physical altercation and two homemade weapons were found on plaintiff's person. (Heffernan Decl. [D.E. 85-3] ¶¶ 9, 15; Pl. Stmt. [D.E. 90] at 4; Def. Ex. 6 [D.E. 85-3] at 49, 60–61). Under the circumstances, the Heffernan's strip search of plaintiff was reasonable. See

13

Johnson v. Robinette, 104 F.4th 99, 115 (4th Cir. 2024) ("[P]rison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches." (citation omitted)); see also Crawford v. Cuomo, 796 F.3d 252, 258 (2d Cir. 2015).

To the extent plaintiff alleges that defendant Heffernan sexually assaulted him, plaintiff's own perceptions alone that the search was of a sexual nature are not sufficient to establish a constitutional violation. See May v. Solomon, No. 5:14-CT-3318-FL, 2015 WL 2190880, at *2 (E.D.N.C. May 11, 2015), ("The plaintiff [] must allege facts beyond merely his own perceptions to demonstrate that the unwanted sexual touching had some sexual aspect to it.") (internal quotation omitted), aff'd, 615 F. App'x 828 (4th Cir. 2015); Berryhill v. Schriro, 137 F.3d 1073, 1076–77 (8th Cir. 1998).

4. Defendant Taylor – Disciplinary Hearing Claims

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; accord Meachum v. Fano, 427 U.S. 215, 223 (1976). "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). A substantive due process claim requires action "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999) (en banc) (quotation omitted); see Desper v Clarke, 1 F.4th 236, 248 (4th Cir. 2021), cert. denied, 142 S. Ct. 811 (2022).

14

To determine whether a defendant violated due process, the court initially must determine whether a protected liberty or property interest exists. See Sandin v. Conner, 515 U.S. 472, 483–84 (1995); Desper, 1 F.4th at 246. To demonstrate a protected liberty or property interest, "a prisoner must show (1) denial of an interest that can arise either from the Constitution itself or from state laws or policies, and that (2) "this denial imposed on him an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Prieto, 780 F.3d at 251 (quotations omitted).

The evidence of record show that the sanctions imposed after each disciplinary hearing consisted of placement in restricted housing, additional extra duty hours and removal of privileges, such as canteen access, visitation, radio use, and telephone. (Def. Ex. D.5. [D.E. 85-4]). No alterations were made to the duration of plaintiff's sentence. (Id.). Accordingly, plaintiff has failed to demonstrate either a protected liberty interest or that he was subjected to punishment constituting an atypical and significant hardship. See, e.g., Sandin, 515 U. S. at 486; Mayberry v. Starr, 44 F. App'x 679, 680 (6th Cir. 2002) (unpublished); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997); Eason v. Priest, No. 5:19-CT-03259-BO, 2021 WL 3260088, at *5 (E.D.N.C. June 25, 2021) (unpublished); Montgomery v. Medie, 535 F. Supp. 3d 522, 526–27 (E.D. Va. 2021); Rhodes, 475 F. Supp. 3d at 482; Burrell v. Ala. Dep't of Corr., No. 2:15-cv-00977-AKK-TMP, 2015 WL 10323881, at *7 (N.D. Ala. Nov. 23, 2015) (unpublished), report and recommendation adopted, 2016 WL 695659 (N.D. Ala. Feb. 19, 2016) (unpublished); Smith v. Heyns, No. 1:13-cv-694, 2013 WL 5636620, at *12–13 (W.D. Mich. Oct. 16, 2013) (unpublished); Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1258 (D.N.M. 2010), aff'd, 499 F. App'x 771 (10th Cir. 2012) (unpublished); Pierre v. Ozmint, No. C/A 3:09-226-CMC-JRM, 2010 WL 679946, at *6–7 (D.S.C.

Feb. 24, 2010) (unpublished), aff'd, 410 F. App'x 595 (4th Cir. 2011) (per curiam) (unpublished); cf. Dixon v. Leonardo, 886 F. Supp. 987, 991–92 (N.D.N.Y. 1995). Thus, plaintiff's continued assertions concerning the procedures followed during his disciplinary hearings fail. Cf. Hause v. Vaught, 993 F.2d 1079, 1086 (4th Cir. 1993).[4]

     5.    Defendants Clark, Bethea, Quick, Kerstetter, Adams, and Jacobs – Retaliation Claims

Plaintiff alleged defendant Clark retaliated against him by placing him in segregation because plaintiff refused the COVID-19 vaccination. (Compl. [D.E. 1] at 6). Regarding plaintiff's retaliation claims against defendants Bethea, Quick, Kerstetter, Adams, and Jacobs, plaintiff alleges defendants confiscated his legal mail in retaliation for defendant filing legal actions. (Second Mot. Am. [D.E. 6] at 2; Pl. Second Aff. [D.E. 6-2] at 3; Pl. Mot. Suppl. [D.E. 65] at 4). Plaintiff also alleges defendant Jacobs retaliated against him by placing him in "max lockdown." (Fifth Mot. Recons. [D.E. 43] at 3–4). Lastly, plaintiff alleges defendants Jacobs, Bethea, Quick, and Kerstetter placed him in the highest category of custody in retaliation. (Pl. Mot. Suppl. [D.E. 53] at 1–5).

A retaliation claim requires proof of the following: 1) that the plaintiff engaged in constitutionally protected First Amendment activity; 2) the defendant took an action that adversely affected that activity; and 3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); see also

---

[4] To the extent plaintiff alleges a Fifth Amendment due process claim, plaintiff fails to present a genuine issue of material fact where none of the defendants are federal actors. See Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc., 142 F. Supp. 2d 679, 691 (D. Md. 2001).

Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Martin, 858 F.3d at 249; Constantine, 411 F.3d at 500. This is an objective standard, and thus the plaintiff's individual reaction to the defendant's conduct is not dispositive of the second element. See Constantine, 411 F.3d at 500 ("We reject the defendants' suggestion that this inquiry depends upon the actual effect of the retaliatory conduct on a particular plaintiff."). Finally, "a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than de minimis inconvenience to her exercise of First Amendment rights." Id.

The court first addresses plaintiff's claims regarding confiscation of his legal mail. Assuming without deciding that plaintiff engaged in protected First Amendment activity by filing lawsuits, plaintiff has not shown that the retaliation resulted in anything more than de minimis inconvenience to his First Amendment rights. Constantine, 411 F.3d at 500. No verified evidence of record demonstrates plaintiff was prevented from filing lawsuits or that missing legal mail frustrated plaintiff's ability to litigate. (See Pl. Second Aff. [D.E. 6-2] at 3). Nor is there evidence that the confiscation prejudiced plaintiff's pending actions. At most, the record demonstrates plaintiff suffered only de minimis inconvenience. See Constantine, 411 F.3d at 500.

Turning to causation, plaintiff must show that his "protected conduct was a substantial or motivating factor in [the defendant's] decision to take adverse action." Martin, 977 F.3d at 299. And even if the plaintiff makes that showing, the burden shifts to the defendant to establish "a permissible basis for taking that action." Id. at 300. The defendant must show by a preponderance of the evidence that he "would have reached the same decision . . . in the absence of the protected

17

conduct." Id. at 299; see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283 (1977).

Here, the court will assume without deciding that plaintiff met his burden of showing the lawsuits were a substantial and motivating factor in defendants' decision to confiscate plaintiff's legal mail. Defendants confiscated plaintiff's mail the same day he arrived at Scotland CI, and "temporal proximity alone can create the inference of causation" in this context. See Hodges v. Meletis, 109 F.4th 252, 262 (4th Cir. 2024); (Pl. Second Aff. [D.E. 6-2] at 3 (showing defendants confiscated plaintiff's legal mail while plaintiff informed them he needed them for his ongoing lawsuits)).

But "timing alone generally cannot defeat summary judgment once [the defendant] has offered a convincing, nonretaliatory explanation." S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty., 819 F.3d 69, 79 (4th Cir. 2016).[5] Here, defendants offer uncontradicted evidence that they would have made the same decision even absent the knowledge of the lawsuits. (See Kerstetter Decl. [D.E. 85-6] ¶¶ 8–10; Quick Decl. [D.E. 85-7] ¶ 8; Bethea Decl. [D.E. 85-8] ¶¶ 8–10). Plaintiff was informed he could not possess such a large quantity of property and only be in possession of legal mail pertaining to an ongoing case per policy. (Kerstetter Decl. [D.E. 85-6] ¶ 9; Quick Decl. [D.E. 85-7] ¶ 8; Bethea Decl. [D.E. 85-8] ¶¶ 8–9). Because defendants were acting pursuant to a pre-determined application of policy, and in the absence of any other evidence of

---

[5] In S.B., the plaintiff asserted an employment-related retaliation claim under the Rehabilitation Act, and the United States Court of Appeals for the Fourth Circuit employed the "burden-shifting framework of McConnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)" to resolve the claim. 819 F.3d at 78. The Fourth Circuit "routinely use[s] Title VII precedents [employing McDonnell Douglas] in the First-Amendment retaliation context." Hodges, 109 F.4th at 262 n.16

18

adverse action, no reasonable jury could find for plaintiff on the causation element. See S.B., 819 F.3d at 79.

Regarding plaintiff's allegations that he was placed in the highest level of custody and kept in segregation in retaliation, plaintiff provides no evidence beyond conclusory statements that the actions were retaliatory. (See Fifth Mot. Recons. [D.E. 43] at 3–4; Pl. Mot. Suppl. [D.E. 53] at 1-5). Plaintiff's unsupported assertions are not sufficient to defeat defendants' motion for summary judgment. See Danser, 772 F.3d at 348 n.10 (explaining "unsupported speculation" is insufficient to establish deliberate indifference); Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004) (stating that a party's "self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment"); Evans Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (noting "unsubstantiated allegations and bald assertions" cannot defeat a motion for summary judgment).

6. Official Capacity Claims

Finally, moving defendant is entitled to judgment as a matter of law on plaintiff's official capacity claims. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). And in the context here, neither States, state agencies, nor state officials acting in their official capacities are "persons" subject to suit under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Moreover, these claims are barred by the Eleventh Amendment. See Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997). Exceptions to Eleventh Amendment immunity are not applicable here. See, e.g., College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense

19

Bd., 527 U.S. 666, 670 (1999); Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976); Ex parte Young, 209 U.S. 123, 159 (1908).

## CONCLUSION

For the reasons discussed herein, the court GRANTS defendant's motion for summary judgment [D.E. 82]. The clerk is DIRECTED to close the case.

SO ORDERED, this the 31st day of March, 2025.

*Richard E Myers II*
RICHARD E. MYERS, II
Chief United States District Judge